**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**S. LAVON EVANS, JR. DRILLING
VENTURE, LLC, and S. LAVON EVANS JR.**                          **PLAINTIFFS**

**v.**                    **CIVIL ACTION NO. 2:11-CV-12-KS-MTP**

**LAREDO ENERGY HOLDINGS, LLC,
REED PETROLEUM, LLC, and DOES 1 & 2**                        **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

For the reasons stated below the Court finds that the parties to this matter are not completely diverse. Therefore, the Court grants Plaintiffs' Motion to Remand [9]. The Clerk of the Court shall remand this case to the Chancery Court of Jones County, Mississippi.

## I. BACKGROUND

Plaintiff S. Lavon Evans, Jr. Drilling Venture, LLC ("Drilling Venture") is a limited liability company formed in Mississippi, and Plaintiff S. Lavon Evans, Jr. – a Mississippi resident – is its sole member. Defendant Reed Petroleum, LLC ("Reed Petroleum") is a limited liability company formed in Colorado, and its sole member is Reed Cagle – a Colorado resident. Defendant Laredo Energy Holdings, LLC ("Laredo") is a limited liability company formed in Nevada. Its members are Plaintiff Drilling Venture and Defendant Reed Petroleum. The Court is presently required to determine whether Plaintiffs can establish a cause of action against Laredo.

Evans and Cagle agreed to form Laredo for the purpose of constructing and operating an oil rig. Evans was to provide a rig and certain components, while Cagle was to provide capital. They filed the necessary organizing paperwork in January 2006, and an Operating Agreement was

executed on March 6, 2006. According to the Operating Agreement, Drilling Venture and Reed Petroleum are the members of Laredo. Drilling Venture owns 51% of Laredo, and Reed Petroleum owns 49% of Laredo. Evans and Cagle are Laredo's managers.

Throughout the course of their business dealings, Evans and Cagle have become entangled in a number of legal disputes with one another. These disputes have involved various companies held by either of the two – including Drilling Venture and Reed Petroleum. They have also involved litigation against Baker & McKenzie, LLP – on Laredo's behalf – in the Circuit Court of Jones County, Mississippi. Despite the parties' disputes, on November 4, 2010, the Jones County Circuit Court entered a judgment in Laredo's favor against Baker & McKenzie for over $22,000,000.00. This case largely concerns how that judgment should be divided, but Plaintiff Evans also brought his own claims against Laredo.

## II. MOTION FOR LEAVE TO FILE SUR-REPLY TO MOTION TO REMAND

Plaintiffs' Rebuttal [20] contains at least one argument not raised in their Motion to Remand [9], pertaining to the "common defense doctrine." The Rebuttal also arguably provides greater factual detail concerning Plaintiffs' causes of action. Rather than filing a motion to strike, Reed Petroleum sought leave to file a sur-reply. While the Court typically disregards arguments raised for the first time in a rebuttal,[1] allowing Reed Petroleum to file a sur-reply would serve the same substantial purpose – ensuring that it, as the non-movant, is allowed sufficient opportunity to respond to Plaintiffs' Motion to Remand. Accordingly, the Court grants Reed Petroleum's Motion for Leave

---

[1]The Fifth Circuit has not "comprehensively identified all circumstances under which a district court may rely on arguments and evidence presented for the first time in a reply brief," but "it is the practice of . . . the district courts to refuse to consider arguments raised for the first time in reply briefs." *Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) (citing *Vaise Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004)).

to File [21] and deems the proposed sur-reply attached to the motion as filed. To whatever extent Plaintiffs may argue that they are entitled to further opportunity to respond to Reed's proposed sur-reply, they effectively responded to it in their objection [22] to the Motion for Leave to File. Therefore, the Motion to Remand [9] is ripe for review.

### III. MOTION TO REMAND

"There should be little need for a reminder that federal courts are courts of limited jurisdiction, having only the authority endowed by the Constitution and that conferred by Congress." *Halmekangas v. State Farm Fire & Cas. Co.*, 603 F.3d 290, 292 (5th Cir. 2010) (quoting *Epps v. Bexar-Medina-Atascosa Cnties. Water Improvement Dist. No. 1*, 665 F.2d 594, 595 (5th Cir. 1982)). This Court has removal jurisdiction in any case where it has original jurisdiction. 28 U.S.C. § 1441(a). It has "original jurisdiction of all civil matters where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . [c]itizens of different States . . . ." 28 U.S.C. § 1332(a). Complete diversity must exist among the parties. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (citing *Strawbridge v. Curtiss*, 7 U.S. 267, 2 L. Ed. 435, 3 Cranch 267 (1806)). "[A]ll persons on one side of the controversy [must] be citizens of different states than all persons on the other side.'" *Id.* (quoting *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004)). Furthermore, a case may not be removed on the basis of diversity jurisdiction if a party "in interest properly joined and served as defendant[] is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

"The party seeking to invoke federal jurisdiction bears the burden of establishing . . . that the parties are diverse . . . ." *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 639 (5th Cir. 2003) (citing *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998)). The Court

determines the parties' citizenship by reference to the time of removal. *Engler v. Winfrey*, 201 F.3d 680, 686 (5th Cir. 2000). "Because removal raises significant federalism concerns, the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved in favor of remand.'" *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (citing *In re Hot-Hed, Inc.*, 477 F.rd 320, 323 (5th Cir. 2007)).

In the present case, it is undisputed that the amount in controversy exceeds $75,000.00 exclusive of interest and costs. However, Plaintiffs contend that the parties to this action are not completely diverse. Plaintiff Evans is a citizen of Mississippi. Plaintiff Drilling Venture is an LLC whose sole member – Plaintiff Evans – is a citizen of Mississippi. Therefore, Drilling Venture is considered a citizen of Mississippi. *Harvey*, 542 F.3d at 1080. Defendant Reed Petroleum is an LLC whose sole member is a citizen of Colorado. Therefore, Reed Petroleum is considered a citizen of Colorado. *Id.* Defendant Laredo Energy is an LLC whose members are Plaintiff Drilling Venture, a Mississippi citizen, and Defendant Reed Petroleum, a Colorado citizen. Therefore, Laredo is considered a citizen of both Mississippi and Colorado. *Id.* Accordingly, on the face of the complaint, the parties are not completely diverse, as Plaintiffs and Defendant Laredo Energy are Mississippi citizens.

However, Reed Petroleum argues that Laredo's citizenship should not be considered in the Court's jurisdictional analysis. First, Reed Petroleum argues that Laredo's citizenship should be disregarded, as it is a nominal party with no real interest in this dispute. Second, Reed Petroleum argues that Laredo was improperly joined to defeat diversity. Both of these arguments hinge on the same substantial question: whether Plaintiffs can establish a cause of action against Laredo in state court. As the Court shall explain, Plaintiff Evans can establish a cause of action against Laredo in

state court, and, therefore, the parties to this matter are not completely diverse.

## A.     *Real Party to the Controversy*

"The 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy." *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) (citing *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460, 100 S. Ct. 1779, 64 L. Ed. 2d 425 (1980)). "Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n*, 446 U.S. at 461, 100 S. Ct. 1779; *see also Louisiana v. Union Oil Co.*, 458 F.3d 364, 366 (5th Cir. 2008); *Wolff v. Wolff*, 768 F.2d 642, 645 (5th Cir. 1985).

"Whether a party is 'nominal' for removal purpose depends on 'whether, in the absence of the [defendant], the Court can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable to the plaintiff.'" *Acosta v. Master Maint. & Constr., Inc.*, 452 F.3d 373, 379 (5th Cir. 2006) (*quoting Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen & Assistants Local 349*, 427 F.2d 325, 327 (5th Cir. 1970)). "An alternate articulation of the test is whether or not a named party's 'role in the law suit is that of a depositary or stakeholder.'" *Union Oil Co.*, 458 F.3d at 367 (citing *Tri-Cities Newspapers, Inc.*, 427 F.2d at 327). The Court takes "practical considerations into account in making this determination." *Id.* at 367. The Court's analysis is not "dependant on how the plaintiff labels its complaint, but rather on the practical effect of a judgment on a given defendant." *In re: Beazley Ins. Co.*, No. 09-20005, 2009 U.S. App. LEXIS 29463, at *15 (5th Cir. May 4, 2009) (citing *Union Oil Co.*, 458 F.3d at 367). The result of the analysis will depend "on the facts in each case." *Tri-Cities Newspapers, Inc.*, 427 F.2d at 327 (citing *Boeing Airplane Co. v. Aeronautical Indus.*, 91 F. Supp. 596 (W.D. Wash. 1950)).

"The bottom line concern in determining a nominal party is whether the plaintiff can establish a cause of action against the non-removing [or non-diverse] defendant in state court." *Farias v. Bexar Cnty. Bd. of Trustees for Mental Health Retardation Servs.*, 925 F.2d 866, 872 (5th Cir. 1991). "To establish that non-removing [or non-diverse] parties are nominal parties, 'the removing party must show . . . that there is no possibility that the plaintiff would be able to establish a cause of action against the non-removing [or non-diverse] defendants in state court." *Id.* (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981)). The Fifth Circuit has described the standard of review to be employed by a district court in making this determination:

> As a procedural matter, a district court need not and should not conduct a full scale evidentiary hearing on questions of fact affecting the ultimate issues of substantive liability in a case in order to make a preliminary determination as to the existence of subject matter jurisdiction. The question of whether the plaintiff has set forth a valid claim against the in-state defendant(s) should be capable of summary determination.

*Green v. Amerada Hess Corp.*, 707 F.2d 201, 204 (5th Cir. 1983) (quoting *B., Inc.*, 663 F.2d at 551).[1] "In making its determination, the court must ordinarily evaluate all of the factual allegations of the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff." *Green*, 707 F.2d at 205 (citing *B., Inc.*, 663 F.2d at 549).

Plaintiff Evans asserts a quantum meruit claim against Laredo. He claims that he made loans to Laredo to finance its litigation against Baker & McKenzie, and that he expended time, effort, and

---

[1] In *Green*, the Fifth Circuit addressed the purported fraudulent joinder of an in-state defendant. *Id.* at 205. Defendants have argued fraudulent joinder separate from the issue of whether Laredo is a nominal party in this case. It is not necessary for the Court to fully delineate the extent to which these two doctrines track one another. The Fifth Circuit cited *Green* – a fraudulent joinder case – in a "nominal party" case involving a defendant who failed to join in a removal notice. *Farias*, 925 F.2d at 871. The two analyses appear to be substantially identical. *Compare Green*, 707 F.2d at 205, *with Farias*, 925 F.2d at 871.

money in prosecuting the Baker & McKenzie litigation.

"Quantum meruit recovery is a contract remedy which may be premised either on express or 'implied' contract, and a prerequisite to establishing grounds for quantum meruit recovery is claimant's reasonable expectation of compensation." *In re Estate of Fitzner*, 881 So. 2d 164, 173 (Miss. 2003). The elements of a quantum meruit claim are:

> (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person to be charged, used and enjoyed by him; and (4) under such circumstances as reasonably notified person sought to be charged that plaintiff, in performing such services, was expected to be paid by person sought to be charged.

*Id.* at 173-74 (citing *Reed v. Weathers Refrigeration & Air Conditioning, Inc.*, 759 So. 2d 521, 525 (Miss. Ct. App. 2000)). The Mississippi Supreme Court has explained:

> The doctrine of quantum meruit applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong.

*Id.* Phrased differently, the doctrine of quantum meruit applies where a plaintiff performed "additional work not contemplated by" his contract with a defendant, and that the defendant accepted the work and understood that the plaintiff "desired to be compensated for said services." *Tupelo Redevelopment Agency v. Gray Corp.*, 972 So. 2d 495, 515 (Miss. 2007). "[I]n order for a party to recover under a theory of quantum meruit, 'an award . . . would require a finding by the court that the labor was not anticipated by the contract, and also that there were no provisions of the contract by which payment could be made for unanticipated labor.'" *Id.* (quoting *Citizens Nat'l Bank v. L. L. Glascock, Inc.*, 243 So. 2d 67, 70 (Miss. 1971)).

In response to Plaintiff Evans' quantum meruit argument, Defendant Reed Petroleum initially

argues that, as a manager of Laredo, Evans' compensation and responsibilities are governed by the Operating Agreement, and that the existence of a written contract governing the relationship between Evans and Laredo bars any quantum meruit claim. However, the existence of a written contract does not necessarily bar a quantum meruit claim.[2] The issue is whether the Operating Agreement was executed in anticipation of the services and loans which Plaintiff Evans allegedly provided to Laredo, and whether it contains provisions by which payment can be made for the same. It is only necessary for the Court to address one of these allegations: Evans' claim that he should be reimbursed for services he acquired on Laredo's behalf in pursuing the Baker & McKenzie litigation.

Evans argues that he has a valid quantum meruit claim against Laredo for its alleged failure to reimburse him for services he obtained on its behalf and provided it in the litigation against Baker & McKenzie. Reed Petroleum did not address the issue of reimbursement in its briefing. With respect to reimbursement, the Operating Agreement specifically addresses the reimbursement of Members:

> 6.5 <u>Reimbursement</u>.  The Company shall reimburse each Member for each Member's actual and reasonably out-of-pocket expenditures made pursuant to the exercise of such Member's authority under this Agreement or reasonably made for the purpose of preserving the Company's business or property provided such expenses have been approved by the Manager.

---

[2] Reed Petroleum cites *United States v. Fed. Ins. Co.*, 251 F. App'x 269, 273 (5th Cir. 2007), in which the Fifth Circuit cites *Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.*, 743 So. 2d 954, 970 (Miss. 1990), for the proposition that "[w]here there is a contract, parties may not abandon same and resort to quantum meruit." However, in *Sentinel Industrial Contracting Corporation*, the Mississippi Supreme Court also stated that "[a]n award on a quantum meruit basis 'would require a finding by the court that the labor was not anticipated by the contract, and also that there were no provisions of the contract by which payment could be made for the unanticipated labor.'" 743 So. 2d at 970 (quoting *Citizens Nat'l Bank*, 243 So. 2d at 70). Therefore, it is clear that the existence of a contract – while it may be relevant to the reasonableness of a party's expectation of compensation – does not automatically bar a quantum meruit claim. The key inquiry is whether the contract addressed the services in question.

However, Evans is not a Member of Reed Petroleum. He is a Manager.

With respect to the reimbursement of Managers, Article 4.10 of the Operating Agreement provides:

> 4.10 <u>Compensation, Reimbursement, Organization Expenses</u>. The compensation of the Managers shall be fixed time to time by an affirmative vote of the Members, and no Manager shall be prevented from receiving such salary by reason of the fact that it is also a Member of the Company.
>
> (a) The Company shall reimburse the Members for any expenses reasonably incurred by them in connection with the formation, organization and capitalization of the Company, including the legal fees incurred in connection with negotiating and drafting this Operating Agreement.
>
> (b) The Manager shall cause the Company to make an appropriate election to treat the expenses incurred by the Company in connection with the formation and organization of the Company to be deducted to the maximum extent allowable under Code Section 702(b)(2) and any excess amount amortized over the 180 month period beginning with the month in which the Company begins business to the extent that such expenses constitute "organizational expenses" of the Company within the meaning of Code Section 709(b)(3).

Therefore, while the Operating Agreement generally addresses the reimbursement of Members for reasonable out-of-pocket expenses, it only address the reimbursement of Managers for expenses incurred "in connection with the formation, organization and capitalization of the Company . . . ." The purported expenses for which Evans seeks reimbursement were not related to the formation, organization, or capitalization of Laredo. Rather, they were related to the pursuit of a lawsuit on Laredo's behalf. Accordingly, it does not appear that the Operating Agreement was executed in anticipation of a Manager seeking reimbursement of the sort that Evans seeks in the present action. Furthermore, it contains no provision by which Laredo may reimburse Evans.

The Court expresses no opinion concerning the factual allegations underlying Plaintiff Evans'

quantum meruit claim. There are obviously a number factual disputes in this matter. However, the Court's present concern is whether, when evaluating the factual allegations of the Plaintiffs' state court pleadings in the light most favorable to them and resolving all disputed facts in their favor, Evans has stated a valid quantum meruit claim against Laredo. As the Operating Agreement does not contain a provision addressing the reimbursement of Managers for expenditures of the sort Evans alleges he incurred, the Court finds that he has a reasonable possibility of establishing a quantum meruit claim against Laredo.

Having concluded that Evans has a reasonable possibility of recovery against Laredo, the Court must now address an alternate articulation of the "nominal party" test. The Fifth Circuit has held that one may examine "whether or not a named party's 'role in the law suit is that of a depositary or stakeholder'" to determine whether they are a real party to the controversy. *Union Oil Co.*, 458 F.3d at 367 (citing *Tri-Cities Newspapers, Inc.*, 427 F.2d at 327). It has further held that the Court should take "practical considerations into account in making this determination." *Id.* Reed Petroleum argues that Laredo is nothing more than a depositary of the Baker & McKenzie judgment, and that the real dispute is between Evans/Drilling Venture and Cagle/Reed Petroleum over the manner in which judgment should be divided. Indeed, the Court acknowledges that the practical reality of the closely-held limited liability companies involved in this matter may weigh toward denying remand.

However, the Fifth Circuit has also held that "[t]he bottom line concern in determining a nominal party is whether the plaintiff can establish a cause of action against the non-removing [or non-diverse] defendant in state court." *Farias*, 925 F.2d at 872. Reed Petroleum, as the removing party, "must show . . . that there is no possibility that [Evans] would be able to establish a cause of

10

action against the non-removing [or non-diverse] defendants in state court." *Id.* In light of Evans' quantum meruit claim for reimbursement of expenditures in pursuing the litigation, the Court is not convinced that Laredo enjoys as passive a role in this matter as Reed Petroleum suggests. If Laredo has to defend itself against any viable claim, it is not a nominal defendant. *Id.* at 872. Furthermore, the Court must resolve "any doubt as to the propriety of removal . . . in favor of remand." *Gutierrez*, 543 F.3d at 251.

For all the reasons stated above, the Court finds that Defendant Laredo Energy Holdings, LLC is not a merely nominal or formal defendant, as argued by Defendant Reed Petroleum. Rather, Laredo is a real party to this controversy, with a stake in its outcome.

**B.**     ***Improper Joinder***

In the Fifth Circuit, there are "two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)). Only the second prong of the analysis is before the Court today. In order to prove improper joinder, one must demonstrate "that there is no possibility of recovery by the plaintiff against an in-state [or non-diverse] defendant, which stated differently means that there is no reasonable basis for the . . . court to predict that the plaintiff might be able to recover against an in-state [or non-diverse] defendant." *Id.* "The burden of persuasion on a party claiming improper joinder is a 'heavy one.'" *Kling Realty Co. v. Chevron United States, Inc.*, 575 F.3d 510, 514 (5th Cir. 2009) (citing *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007)). The Fifth Circuit has described the standard of review district courts must employ when considering a claim of improper joinder:

> In analyzing whether a plaintiff has demonstrated a reasonable possibility of recovery, the district court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant, or the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry. In doing so, however, the court must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff. Any ambiguities in state law or contested fact issues must be resolved in favor of the plaintiff. The focus of the inquiry must be on the joinder, not the merits of plaintiff's case.

*Menendez v. Wal-Mart Stores, Inc.*, 364 F. App'x 62, 69 (5th Cir. 2010) (punctuation and internal citations omitted) (citing *Smallwood*, 385 F.3d at 573; *Travis*, 325 F.3d at 649).

As the Court noted above in its analysis of Reed Petroleum's "nominal party" argument, a Rule 12(b)(6) inquiry shows that Evans has a reasonable probability of success on his quantum meruit claim against Laredo.[3] Therefore, the Court finds that Reed Petroleum has failed to carry its burden of showing that there is no reasonable possibility that Evans could recover from Laredo. Accordingly, the Court holds that Laredo was not improperly joined.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Defendant Laredo Energy Holdings, LLC is a real party to this controversy and is not improperly joined. Therefore, complete diversity does not exist among the parties. Accordingly, the Court grants Plaintiffs' Motion to Remand [9]. The Clerk shall remand this case to Chancery Court of Jones County, Mississippi.

---

[3] While it is within the Court's discretion to conduct a Rule 56 analysis, the Court declines to do so. Nevertheless, it does not appear that a Rule 56 standard of review would change the outcome of this motion, given the state of the record. Both parties have presented little evidence as to the merits of Evans' quantum meruit claim, his alleged expenditures, and their surrounding circumstances. In a Rule 56 analysis, the Court would be required to resolve all disputed factual issues in Plaintiffs' favor. Therefore, given the dearth of actual evidence in the record, it appears unlikely that Reed Petroleum could show that Evans could not possibly recover against Laredo.

SO ORDERED AND ADJUDGED this 22nd day of March, 2011.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE